**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-cv-25330-ALTMAN**

**JOSE BAUDIMIR BASTIDAS URBINA**,

*Petitioner*,

*v.*

**CHARLES PARRA**, *et al.*,

*Respondents.*

___________________________________/

# ORDER

The Petitioner, Jose Baudimir Bastidas Urbina, has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Petition") [ECF No. 1], challenging his immigration detention. Urbina asks us to order his "immediate release from custody on reasonable conditions of supervision, on the ground that his arrest and continued detention are unlawful." Petition at 21. The Respondents oppose the Petition, arguing that Urbina remains subject to mandatory detention because he "presented himself to U.S. Customs and Border Protection ('CBP'), at the Camino Real Port of Entry Bridge 2, and applied for admission to the United States." Response ("Resp.") [ECF No. 8] at 1. After careful review, we **DISMISS** the Petition.

## THE FACTS

Urbina is a native and citizen of Venezuela. *See* Notice to Appear ("NTA") [ECF No. 8-2] at 1. On August 13, 2023, he presented himself at the "Camino Real Port of Entry Bridge 2 in Texas" and "applied for admission" to the United States. *Ibid.* DHS identified Urbina as "an arriving alien" and alleged that he lacked a "valid entry document" or "document of identity and nationality." *Ibid.* DHS therefore charged him as inadmissible under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). *Id.* at 4. A Customs and Border Protection officer served Urbina with the

NTA that same day, directing him to "appear before an immigration judge" on June 26, 2026. *Id.* at 1–2. Urbina was then "paroled into the United States, pending removal proceedings pursuant to Section 240 of the Immigration and Nationality Act." Crespo Decl. [ECF No. 8-5] ¶ 9. Urbina's parole expired on August 13, 2025. *See* Form I-94 [ECF No. 8-4] at 1 ("Admit Unti Date: 2025 August 13").

On July 8, 2026, DHS issued a warrant for Urbina's arrest. *See* Arrest Warrant [ECF No. 8-7]. That same day, Immigration and Customs Enforcement ("ICE") found Urbina in his home and arrested him. *See* July 8, 2026 Form I-213 [ECF No. 8-6] at 2. On July 30, 2026, an Immigration Judge ("IJ") denied Urbina's request for a bond redetermination, noting that he was an "Arriving Alien." July 30, 2026 IJ Bond Order [ECF No. 8-9] at 1.

Urbina filed this Petition while he was detained at the Krome North Service Processing Center. *See* Petition at 1. In it, he challenges his classification under § 1225(b)(2) and asserts a due-process violation, claiming that he poses neither a flight risk nor a danger and invoking the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). As redress, he asks us to order his immediate release, with or without bond. *See id.* at 20.

## THE LAW

The federal habeas corpus statute, 28 U.S.C. § 2241, "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Cadet v. Bulger*, 377 F.3d 1173, 1181–82 (11th Cir. 2004) (quoting 28 U.S.C. § 2241(c)(3)). This provision allows persons to challenge the legality of their "immigration-related detention[.]" *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Guo Xing Song v. U.S. Atty. Gen.*, 516 F. App'x 894, 899 (11th Cir. 2013) ("[S]o long as an alien does not challenge a final order of removal, district courts retain jurisdiction under § 2241 to review habeas petitions, including challenges to an alien's detention.").

## ANALYSIS

The Petition advances three claims. *First*, Urbina contends that he has been wrongly classified as a § 1225(b)(2) detainee and is entitled to the bond procedures available under § 1226(a). *See* Petition at 14. *Second*, he argues that his continued detention violates his due-process rights because he poses neither a flight risk nor a danger to the community. *See id.* at 16–17. *Third*, he asserts a Fourth Amendment challenge to his immigration stop. *See id.* at 11–12. We address each claim in turn.

### I. Urbina's Detention Under § 1225(b)(2)

Urbina claims that he isn't an "arriving alien" and therefore that his "detention is governed by § 1226, under which he is eligible for release on bond and entitled to a custody hearing before an immigration judge." Petition at 15. The Respondents answer that he "applied for admission into the United States" and thus remains "an arriving alien" subject to mandatory detention, "even if he [was] paroled" into the country. Resp. at 5–6.

Section 1225(b)(2)(A) provides that, if an admissions officer determines that an alien "seeking admission" is not "clearly and beyond a doubt entitled to be admitted" into the United States, the alien "shall be detained for a proceeding under section 1229a." 8 U.S.C. § 1225(b)(2)(A). In *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026), the Eleventh Circuit explained that § 1225(b)(2)(A) imposes three requirements:

> [A]n alien shall be detained for a § 1229a proceeding if he (1) is arriving in the United States or is present in the United States without having been granted lawful entry; (2) is seeking lawful entry after inspection and authorization by an immigration officer; and (3) is not clearly and beyond a doubt entitled to lawful entry, as determined by the examining immigration officer.

175 F.4th at 1269 (cleaned up). As the court explained, the word "seeking" describes an "active and temporally ongoing step or process." *Id.* at 1268. The petitioners in that case, the court said, weren't "applying for entry in any literal sense *when they were detained*" following traffic stops. *Id.* at 1269 (emphasis added). Nor (the court continued) could the government establish that they were "seeking"

admission merely because they contested their removal proceedings; after all, "seeking relief from removal is not the same thing as seeking admission[.]" *Id.* at 1285.

But *Hernandez Alvarez* didn't address our facts—which involve a petitioner who was paroled into the country. *See Sylvaince v. Warden, Miami Fed. Det. Ctr.*, 2026 WL 2568522, at *2 (S.D. Fla. Aug. 31, 2026) (Ruiz, J.) (observing that *Hernandez Alvarez* "did not specifically address" a petitioner's "circumstances as an individual initially paroled into the country"). Congress allows parole of "any alien applying for admission," but it expressly provides that parole "shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A). When parole ends, the alien "shall forthwith return or be returned to the custody from which he was paroled," after which "his case shall continue to be dealt with in the same manner as that of any other applicant for admission." *Ibid.* The regulations likewise provide that the parole's expiration restores the alien to "the status that he or she had at the time of parole." 8 C.F.R. § 212.5(e)(1)(ii), (e)(2)(i). Indeed, "[a]n arriving alien remains an arriving alien" even after parole "is terminated or revoked." 8 C.F.R. § 1.2 (defining an "Arriving alien" as "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport" and noting that "[a]n arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked").

This conclusion comports with the Eleventh Circuit's longstanding understanding that a paroled alien "remains constructively at the border, seeking admission and subject to exclusion proceedings." *Assa'ad v. U.S. Att'y Gen.*, 332 F.3d 1321, 1338 (11th Cir. 2003). And the Supreme Court has said that arriving aliens, "even those paroled elsewhere in the country for years pending removal,"

are treated for due-process purposes "as if stopped at the border." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (cleaned up).

Which brings us to the question presented here: Does an alien who sought admission at a port of entry remain subject to the provisions of § 1225(b)(2) when he's re-detained inside the country *after* being temporarily paroled? We think he does because, unlike the petitioners in *Hernandez Alvarez*, Urbina satisfies all three of the Eleventh Circuit's requirements for an alien to be considered "an arriving alien" subject to mandatory detention under § 1225(b)(2). *See Hernandez Alvarez*, 175 F.4th at 1269 (holding that "an alien shall be detained for a § 1229a proceeding if he (1) is arriving in the United States or is present in the United States without having been granted lawful entry; (2) is seeking lawful entry after inspection and authorization by an immigration officer; and (3) is not clearly and beyond a doubt entitled to lawful entry, as determined by the examining immigration officer" (cleaned up)).*First*, Urbina was "arriving in the United States" without having been granted lawful entry. *Hernandez Alvarez*, 175 F.4th at 1269. He presented himself at the Camino Real port of entry and was identified as "an arriving alien." NTA at 1. Although he was later "paroled into the United States," Crespo Decl. ¶ 9, parole "shall not be regarded as an admission," 8 U.S.C. § 1182(d)(5)(A). And, because an arriving alien "remains an arriving alien" even after parole expires, 8 C.F.R. § 1.2, his physical presence in the interior of the country doesn't alter his classification.

*Second*, Urbina was affirmatively "seeking lawful entry after inspection and authorization by an immigration officer[.]" *Hernandez Alvarez*, 175 F.4th at 1269. He "applied for admission" at the Camino Real port of entry, where an immigration officer inspected him and served him with an NTA ordering him to appear before an immigration judge. NTA at 1. His resulting removal proceedings thus arose from an actual application for admission, rather than from the mere act of "contesting one's removal." 175 F.4th at 1284. And when ICE later re-detained him, those proceedings remained ongoing. *See* Arrest Warrant at 1 (identifying "the pendency of ongoing removal proceedings"). Unlike the

petitioners in *Hernandez Alvarez*, then, who were "only present in the country," 175 F.4th at 1269, Urbina had affirmatively sought admission and remained "constructively at the border, seeking admission[.]" *Assa'ad*, 332 F.3d at 1338.

*Third*, Urbina wasn't "clearly and beyond a doubt entitled to lawful entry, as determined by the examining immigration officer." *Hernandez Alvarez*, 175 F.4th at 1269. Indeed, when he presented himself at the port of entry, immigration officials determined that he *lacked* the required "valid entry document" and charged him as inadmissible under § 212(a)(7)(A)(i)(I). NTA at 1, 4.

That Urbina was paroled doesn't change any of these facts. Parole, after all, "shall not be regarded as an admission," and Congress has directed that an alien return to "the custody from which he was paroled." 8 U.S.C. § 1182(d)(5)(A). Moreover, § 1225(b)(2) "mandate[s] detention of aliens throughout the completion of applicable proceedings," not merely until those proceedings commence. *Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018). Urbina's re-detention therefore occurred during the same admission process that began when he presented himself at the Camino Real port of entry. This distinction gives effect to *Hernandez Alvarez*'s requirement that the alien must be "seeking" admission when he's detained—without treating participation in removal proceedings as an independent application for admission. 175 F.4th at 1269, 1284.

We recognize that district courts are split on this issue. In *Sylvaince v. Warden, Miami Fed. Det. Ctr.*, for instance, Judge Ruiz of our Court held that an alien "re-detained in the interior after living in the United States for years" *was* subject to the strictures of § 1226(a). 2026 WL 2568522, at *3 (S.D. Fla. Aug. 31, 2026) (Ruiz, J.) (cleaned up); *see also Velasquez-Lopez v. Warden, Krome N. Serv. Processing Ctr.*, 2026 WL 2349503, at *2 (S.D. Fla. Aug. 13, 2026) (Bloom, J.) (same). Still, other judges have concluded, as we do here, that previously paroled arriving aliens remain subject to mandatory detention. *See, e.g.*, *Cabrera v. Ripa*, 2026 WL 2253670, at *3 (S.D. Fla. Aug. 5, 2026) (Damian, J.) (relying on *Thuraissigiam*'s observation that aliens paroled "for years pending removal" should be treated "as if

stopped at the border"); *Mesadieu v. U.S. Immigr. & Customs Enf't*, 2026 WL 2792854, at *1 (S.D. Fla. Sept. 10, 2026) (Kuntz, J.) (concluding that previously paroled arriving aliens remain subject to § 1225(b), under which "arriving aliens are not entitled to bond hearings and are subject to mandatory detention").

To be sure, an alien's classification as an arriving alien cannot, standing alone, satisfy *Hernandez Alvarez*'s separate requirement that he be "seeking admission." 175 F.4th at 1268–69. But Urbina *actually sought* admission at the border, and Congress expressly provided that, following parole, he must return to "the custody from which he was paroled" while "his case shall continue." 8 U.S.C. § 1182(d)(5)(A). We cannot reconcile this directive with a rule that allows arriving aliens to evade mandatory detention by "simply overstaying their parole period." *Mesadieu*, 2026 WL 2792854, at *2. Temporary parole cannot become a mechanism for escaping the very custody to which § 1182(d)(5)(A) expressly requires an alien to return.

Because Urbina satisfies *Hernandez Alvarez*'s three requirements—and since his detention remains governed by the provisions of § 1225(b)(2)—he isn't entitled to a bond hearing under § 1226(a). *See* 8 C.F.R. § 1003.19(h)(2)(i)(B) (excluding "[a]rriving aliens in removal proceedings, including aliens paroled after arrival," from IJ bond redeterminations). We therefore **DENY** his statutory challenge.

## II. Due Process

Urbina also advances due-process challenges under the same theory. *See* Pet. at 18 ("Due process entitles [the] Petitioner to a hearing before an immigration judge[.]"); *ibid.* ("Civil detention comports with substantive due process only if it bears a reasonable relation to a legitimate governmental purpose — here, preventing flight or protecting the public." (citing *Zadvydas*, 533 U.S. at 690)). But the Supreme Court has already held that the government needn't conduct individualized bond hearings to determine an alien's flight risk and may detain aliens in removal proceedings to

combat the risk of widespread flight. *See Demore v. Kim*, 538 U.S. 510, 528 (2003) (upholding § 1226(c)'s mandatory-detention scheme against a challenge that alien detainees had a due-process right to individualized bond hearings). And Urbina has been detained for just over three months, since July 9, 2026. *See* Petition at 10 (stating that the Petitioner "has remained in continuous custody since July 9, 2026"). Urbina's *Zadvydas* claim is therefore premature and must be denied. *See Zadvydas*, 533 U.S. at 701 ("[F]or the sake of uniform administration in the federal courts, we recognize [a presumptively reasonable six-month detention] period."); *see also Phadael v. Ripa*, 2024 WL 3088350, at *2 (S.D. Fla. June 21, 2024) (Altman, J.) ("Unless a detainee shows that his *post-removal* detention is *in excess of six months*, his § 2241 petition must be dismissed as premature." (cleaned up)); *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1217 (11th Cir. 2016) ("[T]here is little chance that a[n] . . . alien's detention is unreasonable until at least the six-month mark."). We therefore **DENY** Urbina's due-process challenges.

## III. The Fourth Amendment Claim

Urbina's Fourth Amendment claim fares no better. On July 8, 2026, ICE "encountered [the] Petitioner at his home and issued a warrant for his arrest." Crespo Decl. ¶ 12. Urbina argues that ICE's initial stop "was unsupported by reasonable suspicion" and therefore violated his Fourth Amendment rights. Pet. at 12. For three reasons, we reject this challenge. *First*, "habeas is not a vehicle to address defects in an initial arrest; it exists to assess whether a current detention is unlawful." *Zaga Tawil v. Cardinal*, 2026 WL 2198539, at *9 (S.D. Fla. July 30, 2026) (Bloom, J.). "In other words, if the government has lawful grounds to detain Petitioner pending his removal, he is not entitled to habeas relief based on a defective arrest." *Acosta Gonzalez v. Noem*, 2026 WL 1077836, at *4 (S.D. Fla. Apr. 20, 2026) (Singhal, J.). *Second*, the Supreme Court has held that, "if sufficient ground for [the petitioner's] detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment." *Nishimura Ekiu v. United States*, 142 U.S. 651, 662 (1892). *Third*, "the Eleventh Circuit has held that § 1252(g) bars courts from exercising jurisdiction over Fourth Amendment claims that

arise in the context of federal agents detaining an alien, as 'securing an alien while awaiting a removal determination constitutes an action taken to commence proceedings.'" *Tawil*, 2026 WL 2195839 (quoting *Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013)). Because Urbina has been lawfully detained under the provisions of § 1226(a), he cannot now challenge his arrest under the Fourth Amendment. We accordingly **DENY** the Petitioner's Fourth Amendment challenge.

* * *

After careful review, therefore, we **ORDER and ADJUDGE** that the Petition [ECF No. 1] is **DISMISSED**. We direct the Clerk of Court to **CLOSE** this case and **TERMINATE** any pending motions and deadlines.

**DONE AND ORDERED** in the Southern District of Florida on October 26, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: Counsel of record